IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 27, 2022

## RONALD WAYNE GILBERT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sevier County**
**No. 20805-II          James L. Gass, Judge**

_____

## No. E2021-00737-CCA-R3-PC

_____


Following a bench trial, Ronald Wayne Gilbert ("Petitioner") was convicted of especially aggravated kidnapping and aggravated assault, for which he received an effective sentence of thirteen and one-half years' incarceration. This court affirmed Petitioner's convictions on direct appeal. *State v. Ronald Wayne Gilbert*, No. E2017-00396-CCA-R3-CD, 2018 WL 2411835, at *1 (Tenn. Crim. App. May 29, 2018), *perm. app. denied* (Tenn. Sept. 13, 2018). Petitioner filed a pro se post-conviction petition and an amended petition following the appointment of counsel. Following a hearing, the post-conviction court denied relief. On appeal, Petitioner argues that he was denied the effective assistance of counsel based on counsel's failure to argue that the evidence was insufficient to sustain his conviction for especially aggravated kidnapping based on *State v. White*, 362 S.W.3d 559 (Tenn. 2012). Petitioner further argues that his conviction for especially aggravated kidnapping constitutes plain error. After a thorough review of the record and applicable case law, the judgment of the post-conviction court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

William L. Wheatley, Sevierville, Tennessee, for the appellant, Ronald Wayne Gilbert.

Herbert H. Slatery III, Attorney General and Reporter; Kayleigh Butterfield, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Ronald C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

The Sevier County Grand Jury charged Petitioner with two counts of especially aggravated kidnapping, two counts of attempted first degree murder, two counts of aggravated assault, and one count of violating an order of protection. The trial court entered an agreed order severing the first three counts of the presentment from the remaining counts. Petitioner then waived his right to a jury trial, and a bench trial was held before the Honorable Robert E. Lee Davies, Senior Judge, on one count each of especially aggravated kidnapping, attempted first degree murder, and aggravated assault. *Ronald Wayne Gilbert*, 2018 WL 2411835, at *1.

On direct appeal, this court summarized the proof presented at trial, as follows:

The State's proof at trial showed that [Petitioner] and the victim, Brandi Gilbert, married in 1993 and had three children together. By early March 2015, the family had relocated from California to Cosby, Tennessee. While the family was still residing in California, [Petitioner] struck the victim and one of their sons, and, in 2010, [Petitioner] engaged in the first of several suicide attempts by trying to hang himself in front of the victim. The victim explained that [Petitioner] suffered from progressive multiple sclerosis.

During the first five weeks in which the family had resided in Cosby, [Petitioner] remained secluded in the master bedroom of the family's residence. During the rare occasions that [Petitioner] emerged from the bedroom, he was "really, really vicious and verbally abusive." On the morning of April 18, 2015, [Petitioner] awoke uncharacteristically early and began packing to leave the house. When the victim asked him what he was doing, [Petitioner] told her that he was planning to purchase an airplane ticket to fly to California and "kill [their] son's girlfriend." The victim was alarmed, and the couple argued. The argument escalated to a point that [Petitioner] was "so out of control" with "yelling and cussing" that the victim contacted the local domestic violence hotline. [Petitioner] grabbed the telephone and disconnected the call. The hotline called the victim back, and eventually, the victim called 9-1-1, reporting to the operator that [Petitioner] was suicidal and was threatening to kill other people.

After calling 9-1-1, the victim was standing in a doorway of the residence when [Petitioner] "swept [her] feet out from under [her] and

dropped down to sit on [her] chest." [Petitioner] placed a knife blade against the victim's throat and said, "I'll cut your f[***]ing throat, and then he ripped [the victim's] shirt up and put the blade to [her] stomach and said, I'll f[***]ing gut you." The victim remained very still and quiet because she "saw [her] death on his face," and she believed that [Petitioner] intended to kill her. While [Petitioner] was holding the knife against the victim's abdomen, he punctured her skin, drawing blood and leaving a small cut.

[Petitioner] then "leaned back" on his heels and started to stand, at which point the couple's 11-year-old son threw himself between [Petitioner] and the victim. The victim screamed for her son to run, and as the victim stood up, she saw [Petitioner] fleeing through the front door and escaping on a bicycle.

Sevier County Sheriff's Department ("SCSD") Deputy Jayson Parton was dispatched to [Petitioner's] residence on April 18, 2015, in response to a domestic situation; Deputy Parton recalled that the call came in "through the domestic hotline" and that the situation involved the suspect's holding the victim at knifepoint. When Deputy Parton arrived at the scene, the victim and her minor son were present, along with Pittman Center Police Department ("PCPD") Officer Todd Myers. Deputy Parton observed that the victim appeared to be upset and scared. While Deputy Parton was interviewing the victim, SCSD Corporal Clint Parton arrived at the scene, and both Deputy Parton and Corporal Parton searched for [Petitioner], who had reportedly fled into the woods near his residence. Deputy Parton eventually took the victim to the residence of nearby neighbors. Before leaving the victim, Deputy Parton photographed the injuries to the victim's right hand and neck. Deputy Parton was equipped with a body camera during his interactions with the victim, and through Deputy Parton's testimony, the State introduced into evidence the video recording taken at the scene. The recording showed, among other things, the victim's intermittent writing of a statement.

Corporal Parton later located [Petitioner] in a nearby barn. [Petitioner] "had a dog collar or dog chain around his neck" and was "threatening to hang himself." [Petitioner] was taken into custody without incident. Officers did not recover a knife from [Petitioner].

With this evidence, the State rested. Following the trial court's denial of [Petitioner's] motion for judgments of acquittal, [Petitioner] elected not to testify and chose to present no proof. Based on this evidence, the trial court

convicted [Petitioner] as charged of both especially aggravated kidnapping and aggravated assault, and the court found [Petitioner] not guilty of attempted first degree murder. Following a sentencing hearing, the trial court sentenced [Petitioner] as a mitigated offender to a term of 13 and one-half years' incarceration for the especially aggravated kidnapping conviction, to be served at 100 percent by operation of law and to be served concurrently with [Petitioner's] mitigated sentence of 2.7 years for the aggravated assault conviction.

*Id*. at *1-2 (footnote omitted). On appeal, Petitioner challenged the trial court's denial of his motion to strike the victim's testimony and his motion to dismiss based upon the failure to preserve certain evidence. *Id*. at *1. This court affirmed the convictions and sentences but remanded for correction of a clerical error in one of the judgments. *Id*. at *8. The Tennessee Supreme Court denied permission for further review.

Petitioner subsequently filed a timely pro se petition for post-conviction relief. Following the appointment of counsel, Petitioner filed an amended petition. At a hearing,[1] trial counsel testified that she worked as an Assistant Public Defender for the Fourth Judicial District and that she represented Petitioner during his trial and on direct appeal. Trial counsel stated that, before Petitioner's case, she had tried one jury trial. Trial counsel testified that she thoroughly prepared for Petitioner's trial. Regarding her interactions with Petitioner, she explained that she visited Petitioner at the jail many times and that she wrote him between twenty-five and thirty letters detailing her work on the case. She said that she provided Petitioner with discovery and updated Petitioner on her progress both in person and in her letters.

Trial counsel testified that she filed a motion for new trial following the trial court's decision finding Petitioner guilty. Trial counsel agreed that she did not include a potential *White* issue in the motion for new trial and said that she could not recall her reasoning for that other than, "I remember reading that case at one point, and, to me, it was a jury instruction issue, and it was my assumption that [the trial court] knew about jury instructions and that he understood the law." Trial counsel acknowledged that she did not raise a *White* issue on appeal. Trial counsel recalled speaking to Petitioner in person about the issues she would raise on appeal and "about the timeline" for the appeal. Trial counsel agreed that the appellate court could have addressed any *White* issue under a plain error analysis.

Co-counsel testified that he assisted trial counsel in representing Petitioner at trial and on appeal. Co-counsel explained that he became involved in the case about a week

---

[1] We have summarized only the hearing testimony relevant to the issues raised on appeal.

before trial. He said that, prior to representing Petitioner, he had been practicing criminal law for about a year and a half and that he had tried two or three jury trials. Regarding his representation of Petitioner, co-counsel stated:

> [Trial counsel] had asked me to take a look at the evidence and take a look at everything, so I did that. We went through what they had and what they didn't have a little bit. I went over and spoke with [Petitioner]. [Trial counsel] and I both went over and spoke with [Petitioner] in the attorney booth at the main jail. We kind of hashed out -- really, it was a lot of just back and forth with [trial counsel] and myself and going over potential statements and, I guess, extracting the answers we wanted from the witnesses.

Co-counsel stated that he had been familiar with *White* at the time of trial, and he recalled that the prosecutor brought the *White* opinion to the trial court's attention during trial. When asked why a *White* issue was not raised on appeal, co-counsel responded, "As I recall, *State v. White* was in reference to specific jury instructions . . . . This was a bench trial[.]" He recalled that the issues raised in Petitioner's direct appeal dealt with the loss of a written statement and "the loss or the nonexistence of the video [from] Officer Myers[.]" Co-counsel agreed that a potential *White* issue could have been addressed as plain error by the appellate court.

Petitioner acknowledged that trial counsel visited him in jail and wrote numerous letters to him regarding his case. He said that, after the trial court found him guilty, trial counsel told him that she would file an appeal but that trial counsel did not discuss "specifics." Petitioner testified that neither trial counsel nor co-counsel discussed the *White* opinion with him.

At the conclusion of proof, the post-conviction court found that Petitioner was not denied the effective assistance of counsel. The court accredited the testimony of trial counsel and co-counsel and found "no error or deficiency on their part." The court stated:

> It is asserted under *State v. White* that there was an obligation by these lawyers to stress that further to the court at the trial level and to raise that on appeal. The Court notes this was a nonjury trial, that Judge Davies is well acquainted with the law in Tennessee and *State v. White* as it pertains to criminal charges and proceedings.
>
> It's not, in reviewing this record, quite so simple as to say the knife was placed against the skin of this wife for a mere ten seconds and that's insufficient to support the charge of kidnapping or a more enhanced

kidnapping charge. This record bears out that these events, as the Court has already noted, took place over a span of a far greater period of time than ten seconds or sixty seconds and that this crescendo of being on the floor, placing the knife or piercing the skin of the mother of this child, occurred after a knockdown, after a fuss and fight that necessitated a call for help, that she was not free to leave. She was not available to extricate herself from the scene, and her son who was a young eleven-year-old young man at the time was still there, and that the elements of kidnapping were, by the facts, clearly available to the trier of fact. And so[,] the Court finds that they did – the lawyers did not commit any error in failing to raise that in the motion for a new trial or argue it at the time, stressing that point, to the trier of fact and Judge Davies as the one who would apply the law.

The Court has noted that because of the facts in this record, it was not necessary and they did not deviate from the professional standard not raising that on appeal as well. Obviously[,] . . . if Judge Davies was wrong, the Court of Criminal Appeals still had the right in the reviewing the record to find that to be plain error and correct it. I don't believe there was plain error. I don't think there was error. Therefore, the record bears out that there was no correction to be made at the appellate level. But for our purposes here today, this Court finds that there was no ineffective assistance of counsel in failing to further raise the *State v. White* issue.

After the post-conviction court entered a written order denying relief, Petitioner timely appealed.

## Analysis

### I.

*Standard of review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id*.; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions

concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

*Ineffective assistance of counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A defendant has a right to effective representation both at trial and on direct appeal. *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995) (citing *Evitts v. Lucey*, 469 U.S. 387 (1985)).  The test for ineffective assistance of counsel is the same for both trial and appellate counsel, under the *Strickland* standard set forth above.  *Id*.  That is, a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was deficient in failing to adequately pursue or preserve a particular issue on appeal and that, absent counsel's deficient performance, there was a reasonable probability that the issue "would have affected the result of the appeal."  *Id*. at 597; *see also Carpenter*, 126 S.W.3d at 886-88.

In *Carpenter v. State*, our supreme court provided:

Appellate counsel are not constitutionally required to raise every conceivable issue on appeal.  Indeed, experienced advocates have long emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.

The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion.  Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference.

*Carpenter*, 126 S.W.3d at 887 (internal quotation marks and citations omitted).

The court in *Carpenter* stated that Tennessee courts should consider the following non-exhaustive list of inquiries when evaluating the strength of an omitted issue for the purpose of assessing deficiency:

1) Were the omitted issues "significant and obvious"?

2) Was there arguably contrary authority on the omitted issues?

3) Were the omitted issues clearly stronger than those presented?

4) Were the omitted issues objected to at trial?

5) Were the trial court's rulings subject to deference on appeal?

- 8 -

6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7) What was appellate counsel's level of experience and expertise?

8) Did the petitioner and appellate counsel meet and go over possible issues?

9) Is there evidence that counsel reviewed all the facts?

10) Were the omitted issues dealt with in other assignments of error?

11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id.* at 888 (quoting *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999)) (internal quotation marks omitted). The court further explained:

> If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim.

*Id.* at 887-88 (internal citations omitted).

*Failure to challenge sufficiency of the evidence on direct appeal based on <u>White</u>*

Petitioner contends that he was denied the effective assistance of appellate counsel based on counsel's failure to challenge the sufficiency of the evidence to sustain his conviction for especially aggravated kidnapping under *White*. Petitioner asserts that counsel's performance was deficient because the omitted issue was significant and obvious, the issue was clearly stronger than the issues presented by counsel on direct appeal, counsel was relatively inexperienced and offered no reasonable explanation as to the decision to omit the issue from the direct appeal, and counsel failed to discuss with Petitioner a sufficiency challenge as a potential appellate issue. He argues that he was prejudiced by counsel's failure to raise the issue on appeal because the evidence showed that the victim's confinement was "essentially incidental" to the aggravated assault and was, therefore, insufficient to support a conviction for especially aggravated kidnapping.

- 9 -

In *White*, our supreme court held "that the legislature did not intend for the kidnapping statutes to apply to the removal or confinement of a victim that is essentially incidental to an accompanying felony[.]" *White*, 362 S.W.3d at 562. As such, when a defendant is charged with aggravated kidnapping and with an accompanying felony, the removal or confinement must have "criminal significance above and beyond that necessary to consummate some underlying offense." *Id.* at 577. Consequently, the trier of fact must determine whether the removal or confinement was essentially incidental to the accompanying felony or whether it was significant enough, standing alone, to support a conviction for kidnapping. *Id.* at 578. In this case, Petitioner waived his right to a jury trial and opted for a bench trial before Judge Davies. As found by the post-conviction court, Judge Davies was aware of the requirements of *White*, and the record reflects that the prosecutor brought *White* to Judge Davies' attention on two occasions during trial.[2] By convicting Petitioner of both especially aggravated kidnapping and aggravated assault, Judge Davies necessarily found that the removal and confinement of the victim had criminal significance beyond that necessary to consummate the aggravated assault.

Because Petitioner's claim of ineffective assistance of counsel is based on the failure of counsel to challenge the sufficiency of the evidence for the especially aggravated kidnapping conviction, we must determine the merits of the omitted issue. *Carpenter*, 126 S.W.3d at 887. When a defendant challenges the sufficiency of the evidence, "the standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000) (quoting *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999)); *see also* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). At the appellate level, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *Smith*, 24 S.W.3d at 279 (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). Any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Moreover, the appellate court will not substitute its own "inferences drawn from circumstantial evidence for those drawn by the trier of fact." *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

As relevant here, especially aggravated kidnapping is false imprisonment accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-305(a)(1) (2018). "A person commits the offense of false imprisonment who knowingly removes or confines

---

[2] To assist in our resolution of this appeal, we take judicial notice of this court's record of Petitioner's direct appeal. *Helton v. State*, 530 S.W.2d 781, 783 (Tenn. Crim. App. 1975).

another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a) (2018).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to sustain Petitioner's conviction for especially aggravated kidnapping as a separate conviction from his aggravated assault conviction. The proof established that, on the day of the offenses, Petitioner told the victim that he was packing to travel to California to kill his son's girlfriend. The victim testified that she was alarmed by this declaration and that she and Petitioner began to argue. The argument escalated with Petitioner "yelling and cussing" and being "out of control." The victim called a domestic violence hotline, but Petitioner took the phone from her and hung it up. The victim then called 9-1-1. The victim testified that Petitioner retrieved a knife with a three to five inch "curved blade with finger holes in it" from the master bathroom. She said that Petitioner swept her legs out from under her and pinned her to the ground with his body weight. He sat on her chest, held the knife to her throat, and said, "I'll cut your f***ing throat[.]" Petitioner then ripped up the victim's shirt, placed the knife to her stomach, and said that he would "f***ing gut [her]." The victim testified that, when Petitioner put the knife to her stomach, he drew blood. Regarding the injury, she said, "It wasn't serious but I did have, you know, a scab there for . . . a week." After Petitioner committed the aggravated assault, the victim could not get up and leave because Petitioner continued to sit on top her holding the knife. The victim testified that Petitioner stayed on top of her for several moments after cutting her stomach, looking directly into her eyes. She said that she "laid very, very still, and he looked at me a minute." The victim stated that she did not move because she "saw [her] death on his face," and she believed that [Petitioner] intended to kill her. She testified that she was able to get away from Petitioner when their eleven-year-old son threw himself between her and Petitioner, after which she and their son were able to escape out the back door.

We conclude that, when taken in the light most favorable to the State, the evidence of confinement standing alone was sufficient for a rational trier of fact to find that Petitioner committed especially aggravated kidnapping. *See e.g., State v. Christopher Lee Williams*, No. M2016-00568-CCA-R3-CD, 2017 WL 1063480, at *5 (Tenn. Crim. App. Mar. 21, 2017) (affirming kidnapping and domestic assault convictions where the defendant assaulted victim multiple times when she was trying to leave home). Because the issue lacks merit, Petitioner has not established deficient performance or prejudice based on trial counsel's failure to challenge the sufficiency of the evidence for especially aggravated kidnapping on direct appeal. *Carpenter*, 126 S.W.3d at 887-888. Petitioner is not entitled to relief.

## II.

Petitioner also raises a stand-alone challenge to the sufficiency of the evidence for especially aggravated kidnapping, asking that this court grant relief under plain error. However, as noted by the State, Petitioner waived his sufficiency of the evidence challenge by failing to raise it on direct appeal. Tenn. Code Ann. § 40-30-106(g). Moreover, this court has previously held that sufficiency of the evidence is not cognizable in post-conviction proceedings. *Cole v. State*, 798 S.W.2d 261, 264 (Tenn. Crim. App. 1990) ("It has long been established that issues concerning the sufficiency of the evidence . . . are not cognizable in post-conviction proceedings."). Similarly, our supreme court has stated that "the plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed waived or previously determined." *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 219 (Tenn. 2009)) (internal quotation marks omitted). Accordingly, Petitioner's stand-alone sufficiency challenge is not cognizable and does not entitle him to post-conviction relief.

## **Conclusion**

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE